**MONARCH CONSTRUCTION COMPANY et al.,**

v.

**OHIO SCHOOL FACILITIES COMMISSION et al.**

2002-Ohio-2957.]

Court of Common Pleas of Ohio,
Franklin County.

No. 02CVH04–4222.

Decided June 10, 2002.

Schottenstein, Zox & Dunn, Roger L. Sabo and Daniel R. Wireman, for plaintiff Monarch Construction Co.

Betty D. Montgomery, Attorney General, Michael R. Gladman and Dan E. Belville, Assistant Attorneys General, for defendant Ohio Schools Facilities Commission.

Bricker & Eckler, Jack Rosati, Jr., and Sylvia Lynn Gillis, for defendant Tri–Village Local School District.

Kegler, Brown, Hill & Ritter and Donald W. Gregory, for intervening defendant Peterson Construction, Inc.

---

JENNIFER L. BRUNNER, Judge.

{¶ 1}  This matter is before the court upon motions for stay pending appeal of defendants Ohio School Facilities Commission ("OSFC") and Tri–Village School District ("Tri–Village"), filed June 6, 2002, at 2:56 p.m. and 2:53 p.m. respectively. Defendant Tri–Village requested an immediate hearing as part of its motion, and the court held a hearing on the parties' motions within two hours of the filing of the motions.  The court agrees with the parties that a stay must be granted, and such stay for each of these defendants is without bond.  Civ.R. 62(B) and (C). The question that became evident at the hearing of these motions was, what is stayed when the court grants defendants' motions?  The court in its May 30, 2002

decision issued a declaratory judgment as to the rights of the parties and preliminarily enjoined the defendants from proceeding with construction using Peterson Construction, Inc. ("Peterson") as its prime contractor for the general trades package (No. 7) of the school construction project.

{¶ 2} Defendant Tri–Village asserts that with a stay it can resume construction with Peterson, whose contract was declared void by the court. Plaintiff Monarch Construction Company ("Monarch") asserts that Civ.R. 62(D) permits the court to preserve the status quo and the "effectiveness of the judgment subsequently to be entered" as set forth in the rule by entering an appropriate order for the pendency of the appeal. Plaintiff Monarch asserts that to allow defendant Peterson to construct the school building would be to destroy the status quo.

{¶ 3} "Granting or denying an injunction is within the sole discretion of the trial court." *Jane Reece Neighborhood Assn. v. Dayton Bd. of Zoning Appeals* (Nov. 12, 1999), Montgomery App. No. 17807, 1999 WL 1034443, citing *State ex rel. Miller v. Private Dancer* (1992), 83 Ohio App.3d 27, 32, 613 N.E.2d 1066. "The same is true for granting or denying a stay." *Jane Reece Neighborhood Assn.* at * 1, citing *Cardone v. Cardone* (Sept. 2, 1998), Summit App. No. 18873, 1998 WL 597704. The standard of review of a trial court's grant of an injunction or stay or lack thereof is abuse of discretion, that is, whether the court's attitude is unreasonable, arbitrary, or unconscionable. Id.

{¶ 4} The actions of the court in its decision and its final judgment entry on the claims of the plaintiffs were to declare the rights of the parties pursuant to R.C. Chapter 2721 and to issue a permanent injunction consistent with the court's determination of the rights of the parties. In *Athens Metro. Hous. Auth. v. Pierson* (Mar. 12, 2002), Athens App. Nos. 01CA28 and 01CA29, 2002-Ohio-2164, 2002 WL 851767, the appellate court stated at ¶ 27:

{¶ 5} "It is axiomatic in Ohio that in order to obtain a declaratory judgment, a party must establish three elements: (1) a real controversy between adverse parties; (2) a controversy which is justiciable in character; and (3) a situation where speedy relief is necessary to preserve the rights of the parties. See *Coleman v. Ohio Adult Parole Auth.* (Nov. 19, 1997), Ross App. No. 97CA2302, unreported [1997 WL 746046]; see, also, *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 674 N.E.2d 1388; *Fairview Gen. Hosp. v. Fletcher* (1992), 63 Ohio St.3d 146, 586 N.E.2d 80; *Herrick v. Kosydar* (1975), 44 Ohio St.2d 128, [73 O.O.2d 442] 339 N.E.2d 626; *Burger Brewing Co. v. Liquor Control Comm.* (1973), 34 Ohio St.2d 93, [63 O.O.2d 149] 296 N.E.2d 261, paragraph one of the syllabus; *Buckeye Quality Care Centers, Inc. v. Fletcher* (1988), 48 Ohio App.3d 150, 548 N.E.2d 973."

{¶ 6}    Here, the court determined the rights of the parties to a controversy that was real in nature and where speedy relief was necessary to preserve the rights of the parties.  The defendants on appeal now seek to undo what the court did using Civ.R. 62 and urging that "status quo" means moving forward with the construction of the school by defendant Peterson as if this litigation had never existed.  Civ.R. 62(D) specifically permits a judge of an appellate court to "make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered."  While this provision of Civ.R. 62 imbues an appellate judge with these powers, plaintiffs urge this court that it has "broad discretion incident to Civ.R. 62 to issue any order necessary to preserve the status quo while the stay is in effect," citing *Hamilton v. Fairfield Twp.* (1996), 112 Ohio App.3d 255, 273–274, 678 N.E.2d 599.

{¶ 7}    "Civ.R. 62 requires a trial court to issue a stay where a township or other political subdivision appeals the court's decision.  *State ex rel. Ocasek v. Riley* (1978), 54 Ohio St.2d 488, 490, 8 O.O.3d 466, 467, 377 N.E.2d 792, 793–794.  "A court has broad discretion incident to Civ.R. 62 to issue any order necessary to preserve the status quo while the stay is in effect.  See *Dayton City School Dist. Bd. of Edn. v. Dayton Edn. Assn.* (1992), 80 Ohio App.3d 758, 760, 610 N.E.2d 615, 615–616."

{¶ 8}    "As our decision indicates, this case presents numerous, complex questions of state constitutional law which are ripe for review by this court.  The trial court properly recognized that some political authority must continue to govern the territory that comprises Indian Springs during the pendency of this appeal.  The trial court consequently acted well within the scope of its discretionary authority in permitting Indian Springs to continue operating as a city while this appeal was pending.  Therefore, we find no error by the trial court."  *Hamilton,* supra, at 273–274, 687 N.E.2d 599.

{¶ 9}    While the Ohio Supreme Court case of *Dayton City School Dist. Bd. of Edn.,* upon which the *Hamilton* court relied, involved an administrative appeal wherein the trial court acted as an appellate court in reviewing the decision of a political subdivision, the appellate court in *Hamilton* applied the Ohio Supreme Court's holding to a trial court that was determining the constitutionality of a state law and its operation in the parties' situation.

{¶ 10}    The court has found no definitive decision from the Tenth District Court of Appeals on this precise point.  This is a case of first impression and involves issues of fact and law and mixed questions of both.  This case deals with the construction, interpretation, and application of state law that has not previously been examined by a court.  The clear purpose of Civ.R. 62 is to preserve the status quo during an appeal.  This court is required to grant the defendants a

stay. However, without further order, the effect of the stay is unclear and could operate inconsistently with the need to preserve the status quo. Based on *Hamilton,* the court believes that it may issue an appropriate order to preserve the status quo until such time as the appellate court can consider the matter pursuant to Civ.R. 62(D).

██ {¶ 11} Therefore, the court GRANTS defendants' motions for stay, but it ORDERS that no construction or renovation of the Tri–Village K–12 school may take place on the Tri–Village construction Project (as the same is described in ¶ 8 to 21 of the court's decision of May 30, 2002, and as the same is admitted by all the parties in their complaint and answers). All parties have admitted the following allegation of plaintiffs' complaint to be true: "In December 2000, OSFC entered into a Project Agreement with Tri–Village for construction and renovation of the Tri–Village K–12 Additions and Renovations (the 'Project'). The Project is partially funded by OSFC and the remaining portions by Tri–Village," pending an order of an appellate court pursuant to Civ.R. 62(D) to preserve the status quo or the effectiveness of the judgment subsequently to be entered. This court's stay has the effect of preventing the plaintiffs from enforcing the court's decision by causing or attempting to cause, through some subsequent action, the defendants either to rebid the general trades contract or to award it to Monarch.

{¶ 12} For the purposes of this court's order, the "status quo" preserved is what it was at the time the complaint in this action was filed and the temporary restraining order issued by the court, all on April 16, 2002. As of that time the construction for package No. 7, the general trades contract of the school building Project, had not yet begun, nor had Peterson executed any contracts with subcontractors for the construction and renovation of the school building at issue. That status quo was preserved during the life of the litigation in this court, and is preserved by this court subsequent to the issuing of its Civ.R. 62 stay until an appellate court issues an order pursuant to Civ.R. 62(D) or determines this issue otherwise.

{¶ 13} The court notes by way of analogy that in the case of *Baycliffs Corp. v. Marblehead* (Mar. 22, 2002), Ottawa App. No. OT–01–021, 2002 WL 444934, the appellate court found that a litigant against whom an injunction was issued must procure a judicial determination that it was issued wrongfully before a right to damages on a bond accrues. Similarly, the effect of a nondiscretionary stay pending appeal pursuant to Civ.R. 62 should not be to undo the trial court's injunction before it can be determined by a higher court whether it was issued wrongfully.

{¶ 14} Finally, the court notes that the defendants assert that they are entitled to a stay as a matter of right based on case law authority. *State ex rel. Ocasek,* supra. Defendant OSFC has asserted that a stay pending appeal will

serve the important interests of providing safe and adequate schools to Ohio students. The court's order to preserve the status quo (which prevents the defendants from proceeding using Peterson to build and/or renovate the school building for the Tri–Village Project) does not prevent other OSFC construction projects and related contracts from moving forward. However, if they are not approved in conformity with R.C. 3318.30(B) (requiring that "the affirmative vote of two members is necessary for approval of any action taken by the commission"), OSFC and any other school district risk a challenge similar to the one made by plaintiffs in this case.

{¶ 15} The court examined the contract at issue in this litigation for more than the issue of the authority of the executive director to approve commission contracts. The court also found that Tri–Village had abused its discretion in awarding the contract to Peterson and in finding Monarch to be a nonresponsible bidder. The court also found that Peterson's bid was nonresponsive and its contract void. Accordingly, the stay is accompanied by the order as set forth in this decision. No bond is required of either OSFC or Tri–Village consistent with Civ.R. 62(C).

{¶ 16} IT IS SO DECIDED AND ORDERED.

Judgment accordingly.